UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

MICHELLE DICKINSON and
ROBERT DICKINSON,

Plaintiffs,

Case No. 1:10-CV-688

v.

HON. GORDON J. QUIST

COUNTRYWIDE HOME LOANS, INC.,
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC. (a/k/a MERS), THE BANK
OF NEW YORK MELLON FKA THE BANK
OF NEW YORK, as Trustee for the
Certificateholders, CWABS, INC.,
ASSET-BACKED CERTIFICATES,
Series 2006-7, BANK OF AMERICA,
BAC HOME LOANS SERVICING, LP,
a subsidiary of Bank of America, N.A.,

Defendants.
______________________________________/

**OPINION**

Plaintiffs, Michelle Dickinson and Robert Dickinson (the "Dickinsons"), filed a complaint against Defendants, Countrywide Home Loans, Inc. ("Countrywide"), Mortgage Electronic Registration Systems, Inc. ("MERS"), Bank of New York Mellon, f/k/a Bank of New York, as Trustee for the Certificateholders, CWABS, Inc. Asset-Backed Certificates, Series 2006-7 ("BNYM"), Bank of America, BAC Home Loans Servicing, LP ("BAC"), and Fiserv Lending Solutions ("Fiserv"), in the Benzie County Circuit Court alleging various state law claims arising out of a nonjudicial foreclosure on their vacation home. Defendants removed the case to this Court on the basis of diversity of citizenship under 28 U.S.C. § 1332. Following removal, the Court

dismissed Fiserv without prejudice.[1] (Dkt. #16.)

Defendants now move for summary judgment on all claims, and the Dickinsons have filed a response. Although the Dickinsons and Defendants request oral argument, the Court finds that oral argument is unnecessary to an informed resolution of the issues. For the reasons set forth below, the Court will grant Defendants' motion in its entirety and dismiss the Dickinsons' claims with prejudice.

## I. Background

The Dickinsons assert the following claims under three counts in their complaint: (1) a claim for injunctive relief (Count I); (2) a claim for trespass (Count II); and (3) a claim for breach of contract and rescission (Count III), which incorporates a claim for violation of the Michigan Consumer Mortgage Protection Act, M.C.L. § 445.1631, *et seq.* The facts material to the instant motion are largely undisputed, as set forth below.

On May 25, 2006, the Dickinsons obtained a refinance loan from Countrywide in the amount of $295,000. (Dkt. # 31-4, Loan Application; dkt. # 31-3, Michelle Dickinson Dep. ("MD Dep.") at 12-13; dkt. #32-1, Robert Dickinson Dep. ("RD Dep.") at 9-10.) As security for the loan, the Dickinsons granted a mortgage on their property located at 4335 Crystal Dr., Beulah, MI 49617-9460 (the "Property") to MERS, solely as nominee for Countrywide.[2] (Dkt. # 32-1, Mortgage; MD Dep. at 26-27; RD Dep. at 16.) The Property, which the Dickinsons used for a vacation home during the summer for about four weeks each year, (MD Dep. at 10, RD Dep. at 9), is legally described as:

---

[1] The Court also continued the temporary restraining order issued by the state court as a preliminary injunction until January 30, 2011. (Dkt. #16.) Thereafter, the Court entered an order granting Defendants' motion for escrow payments and approving Defendants' proposed order requiring the Dickinsons to make monthly payments of $2,455.37, into escrow with the Court during the pendency of this case. (Dkt. #23.)

[2] Defendant BAC serviced the loan.

"Lots 8, 8A, 9 and 9A of the plat of 'Holiday Beach', according to the recorded plat thereof as recorded in liber 3 of plats, page 40, Benzie County Records." (Dkt. #33-3, Sheriff's Deed.) MERS and/or Countrywide's representatives handled the preparation and recording of the mortgage in a less-than-competent manner. The original mortgage lacked a legal description and was lost and never recorded. An affidavit of lost mortgage, attaching a copy of the mortgage and the legal description for the Property, was later recorded in August of 2008. (Dkt. #32-3, Affidavit of Lost Mortgage.) The information in the affidavit was not entirely accurate, however, as the affidavit that MERS was acting as the nominee Fremont Investment and Loan, rather than Countrywide. Nonetheless, the mortgage accurately stated that MERS was acting as the nominee of Countrywide, and the Dickinsons do not dispute that they actually granted a mortgage on the Property to MERS. (Dkt. #31-2, Plaintiffs' Answers to Defendants' Discovery Requests ¶ 7.)

The Dickinsons defaulted on the loan soon after obtaining it. Within the first year, the Dickinsons failed to make two monthly payments. (MD Dep. at 71; dkt. #32-4, Payment History.) In addition, in the summer of 2007, they defaulted by failing to pay the property taxes. The Adjustable Rate Note that the Dickinsons signed called for monthly interest and principal payments of $2,012.42. (Dkt. #31-5, Adjustable Rate Note ¶ 3.) Although the Dickinsons claim that they told a Countrywide representative that their payments should include an amount for property taxes, it is undisputed that the payments covered only principal and interest and that the Dickinsons were responsible for paying the property taxes themselves. (Dkt. # 32-5, New Loan Payment Form.) Regardless, in June and August of 2007, Countrywide sent the Dickinsons correspondence regarding the delinquent taxes, which instructed the Dickinsons to submit proof that the taxes had been paid. (Dkt. #33-1.) However, the Dickinsons never provided any such proof to Countrywide. (MD Dep. at 43.) Finally, the Dickinsons fell further behind in their payments in 2008 when they separated.

(MD Dep. at 70-71.) After the Dickinsons reconciled, they made one payment, but Countrywide rejected it because they were in default. (*Id.* at 83.)

In February 2008, after the Dickinsons were in default, Countrywide retained Integrity Preservation to inspect and secure the Property. The Dickinsons allege that "on or about February 28, 2008, Countrywide hired someone to break into our residence on Crystal Drive, causing significant physical damage to the structure and posting a sticker on the door prohibiting entry to 'unauthorized persons.'" (Dkt. #1-2, Michelle Dickinson Aff. ¶ 14.) The Dickinsons first discovered that Integrity Preservation had entered the Property in June 2008, when they arrived at the Property, found a padlock on the door, and noticed that the front door had been damaged. (MD Dep. at 101.) The Dickinsons cut the padlock off the door but did not contact Countrywide at that time. (*Id.* at 104.) Integrity Preservation subsequently returned to the Property and re-secured the Property. The Dickinsons allege that when they returned to the Property on July 20, 2008, they discovered that Countrywide had entered the Property a second time and that "hundreds of dollars worth of personal property was missing, [and] the power was shut off, leaving food in the freezer to rot." (Michelle Dickinson Aff. ¶ 17.) At that point the Dickinsons notified Countrywide that they were still occupying the Property. (MD Dep. at 109.)

On September 29, 2009, MERS assigned the mortgage to BNYM. (Dkt. #33-2, Assignment.) Prior to that time, Countrywide had sold or assigned the loan to BNYM. (Dkt. #39-2.) On or about October 7, 2009, BNYM initiated foreclosure proceedings. On December 2, 2009, BNYM purchased the Property at a sheriff's sale. (Dkt. #33-3, Sheriffs Deed.) The redemption period expired on June 2, 2010. Instead of redeeming the Property, the Dickinsons elected to file the instant lawsuit in state court.

## II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

## III. Discussion

### A. Breach of Contract and Rescission

In Count III of their complaint, the Dickinsons allege that:

> Defendants breached their contract, if any, with Plaintiffs by failing to create an escrow account, by trespassing on and damaging and/or removing Plaintiffs' property, and by creating a purported loan obligation that was unconscionable in its terms, and, therefore void, and in failing to provide Plaintiffs with signed documents.

(Compl. ¶ 38.) The Dickinsons further allege that Defendants "breached any purported contract by foreclosing on Plaintiff's real estate, a description of which does not appear in the purported mortgage documents or modification thereof." (*Id.* ¶ 39.) The Dickinsons have abandoned these allegations by failing to offer any evidence, argument, or law showing that Defendants breached a contract in the ways alleged in the complaint. *See White Oak Prop. Dev., LLC v. Washington Twp.*, 606 F.3d 842, 854 (6th Cir. 2010) (holding that the plaintiff "waived its appeal of the district court's dismissal of its claim on the basis of the Tax injunction Act" by failing to raise the issue in its brief);

*Ramos v. Patnaude*, 640 F.3d 485, 489 (1st Cir. 2011) (stating that the plaintiff waived his argument on appeal that he did not fail to exhaust his state law claims for emotional distress by failing to address the merits of those claims in his appellate brief); *Warner v. Pioneer Auto Sales & Leasing, Inc.*, No. 3:10-CV-023, 2011 WL 1438322, at *10 (N.D. Ind. Apr. 14, 2011) ("Because Warner has failed to present any argument attempting to establish her ADEA claim through either of these methods, she has waived her ADEA claim.").

The Dickinsons' only argument is that Defendants (they do not specify which one) breached the contract by attempting to foreclose by advertisement. But even as to this claim the Dickinsons fail to explain how Countrywide/BNYM breached a contract (presumably the mortgage) by foreclosing. They admit that they granted a mortgage on the Property to secure the loan from Countrywide and that they defaulted on the loan.

Citing *Residential Funding Co. v. Saurman*, Nos. 290248, 291443, 2011 WL 1516819 (Mich. Ct. App. Apr. 21, 2011), the Dickinsons argue that the foreclosure was invalid because BNYM did not own the indebtedness. In *Saurman*, as in the instant case, MERS held the mortgages solely as the nominee of the lender. Also as in the instant case, MERS did not own the indebtedness. *Id.* at *1. When the borrowers defaulted, MERS foreclosed by advertisement pursuant to M.C.L. § 600.3201, *et seq.* The borrowers argued that MERS lacked authority to foreclose because it was not one of the parties authorized by M.C.L. § 600.3204(1)(d) to foreclose, which include (1) the owner of the indebtedness; (2) the owner of an interest in the indebtedness secured by the mortgage; and (3) the servicing agent of the mortgage. Because MERS neither owned the indebtedness nor was the servicing agent, MERS could foreclose only if it owned an interest in indebtedness. *Id.* at *3. The Michigan Court of Appeals concluded that MERS did not own an interest in the indebtedness because it did not make the loans. *Id.*

*Saurman* is of no help to the Dickinsons; it is no longer good law. The Michigan Supreme Court reversed the decision shortly after the Dickinsons filed their response to Defendants' motion in this case. *See Residential Funding Co. v. Saurman*, 490 Mich. 909, 805 N.W.2d 183 (2011). The Michigan Supreme Court explained that

> MERS owned a security lien on the properties, the continued existence of which was contingent upon the satisfaction of the indebtedness. This interest in the indebtedness–i.e., the ownership of legal title to a security lien whose existence is wholly contingent on the satisfaction of the indebtedness–authorized MERS to foreclose by advertisement under MCL 600.3204(1)(d).

*Id.* at 909, 805 N.W.2d at 183.

In the instant case, MERS, as the mortgagee, owned an interest in the indebtedness and assigned that interest to BNYM. Under the Michigan Supreme Court's decision in *Saurman*, BNYM was thus authorized to foreclose under M.C.L. § 600.3204(1)(d). Moreover, as noted, *supra*, Defendants have submitted evidence showing that Countrywide previously sold or assigned the indebtedness to BNYM. Consequently, at the time it foreclosed, BNYM also owned the indebtedness. Therefore, the foreclosure was valid.

**B. Violation of the Consumer Mortgage Protection Act**

The Dickinsons allege in Count III that "Defendants have committed prohibited acts barred by MCL 445.1634, including MCL 445.1634(3), (4), (5), as well as other Michigan statutory violations." (Compl. ¶ 40.) The cited provisions state:

> (3) A person, appraiser, or real estate agent shall not make, directly or indirectly, any false, deceptive, or misleading statement or representation in connection with a mortgage loan including, but not limited to, the borrower's ability to qualify for a mortgage loan or the value of the dwelling that will secure repayment of the mortgage loan.
>
> (4) A lender shall not insert or change information on an application for a mortgage loan if the lender knows that the information is false and misleading and intended to deceive a third party that the borrower is qualified for the loan when in fact the third party would not approve the loan without the insertion or change.

> (5) A statement or representation is deceptive or misleading if it has the capacity to deceive or mislead a borrower or potential borrower. The commissioner shall consider any of the following factors in deciding whether a statement or misrepresentation is deceptive or misleading:
>
> (a) The overall impression that the statement or representation reasonably creates.
> (b) The particular type of audience to which the statement is directed.
> (c) Whether it may be reasonably comprehended by the segment of the public to which the statement is directed.

M.C.L. § 445.1634(3)-(5).

The Dickinsons' claim for violation of the Consumer Mortgage Protection Act fails because the Act "does not provide a private cause of action." *Chowdhury v. Aegis Mortg. Corp.*, No. 2:09-cv-11221, 2009 WL 3270090, at *5 (E.D. Mich. Oct. 9, 2009) (citing *Strickfaden v. Park Place Mortg. Corp.*, No. 07-15347, 2008 WL 3540079 (E.D. Mich. Aug. 12, 2008) (same) and *Greene v. Benefit Mort. Corp.*, No. 08-12968, 2009 WL 56056 (E.D. Mich. Jan. 8, 2009) (same)). Moreover, even if the Consumer Mortgage Protection Act provided a private cause of action, the Dickinsons have failed to show that any Defendant committed any act or made any statement that violated the above-cited provisions.

**C. Trespass**

In Count II, the Dickinsons allege that Defendants or their agents trespassed on the Property on at least three occasions. (Compl. ¶ 29.) They further allege that as a result of the entry, Defendants damaged the Property and several items of personal property were taken and never returned. (*Id.* ¶ 30.)

"Recovery for trespass to land in Michigan is available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Adams v. Cleveland-Cliffs Iron Co.*, 237 Mich. App. 51, 67, 602

N.W.2d 215, 222 (1999). An unauthorized entry onto the private lands of another constitutes a trespass. *Id.* at 60, 602 N.W.2d at 219 (quoting *Giddings v. Rogalewski*, 192 Mich. 319, 326, 158 N.W. 951, 953 (1916)). Consent to enter upon private property, however, is an affirmative and absolute defense to a trespass claim. *Am. Transmission, Inc. v. Channel 7 of Detroit, Inc.*, 239 Mich. App. 695, 705-06, 609 N.W.2d 607, 613 (2000).

Paragraph 9 of the mortgage provides, in pertinent part:

> Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument . . . or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. . . . Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.

(Mortgage ¶ 9.) At the time Countrywide retained Integrity Preservation to secure the Property, the Dickinsons had defaulted under both the note and the mortgage by failing to make loan payments when due and failing to pay the property taxes. Thus, the conditions authorizing Countrywide to enter the Property had occurred. It appears that Integrity Preservation actually entered the Property to ensure that it was properly winterized, which required it to break into the house. Moreover, Integrity Preservation could have reasonably assumed that the Dickinsons had abandoned the Property because they were not occupying it at the time, the electricity was turned off, and there was no indication that it was occupied. The Dickinsons argue that it should have been apparent to Defendants that the Property was a summer cottage that would have normally been vacant during the month of February and that Defendants should have contacted them before entering to ascertain the true circumstances. These arguments fail, however, because paragraph 9 grants the mortgagee the unconditional right to enter the premises if the mortgagor defaults, and nothing therein requires that mortgagee to contact the mortgagor before entering the premises.

Regarding the Dickinsons' claim that items of personal property were stolen, they have failed to present any evidence tending to show that agents of Integrity Preservation were responsible for the stolen property. Even with such evidence, however, the Dickinsons cite no legal authority for holding Defendants liable for the intentional acts of Integrity Preservation. In the context of employer and employee, the general rule is that an employer is not liable for the employee's intentional tort committed within the scope of his employment if the employee acts for his own purpose rather than that of the employer. *See Bryant v. Brannen*, 180 Mich. App. 87, 98, 446 N.W.2d 847, 852-53 (1989). There is no indication that the representative of Integrity Preservation was Defendant's employee. Rather, it appears that Integrity Preservation was an independent contractor. The rule regarding intentional acts of independent contractors, such as Integrity Preservation, is that a person cannot be held liable for an independent contractor's acts unless the contractor's acts were foreseeable. *See Lulanaj v. Multi-Building Co.*, No. 230422, 2002 WL 988578, at *3 (Mich. Ct. App. May 10, 2002). In the instant case, the Dickinsons fail to present any evidence showing that Defendants knew or should have known that Integrity Preservation would remove the Dickinsons' personal property. Moreover, there is no indication that Defendants had control over the acts of Integrity Preservation's agents or employees. *See Burks v. Wash. Mut. Bank, F.A.*, No. 07-13693, 2008 WL 4966656, at *8 (E.D. Mich. Nov. 17, 2008) (noting that Michigan courts decline to hold defendants liable for the acts of independent contractors because they lack control over the independent contractor).

**D. Injunctive Relief**

The Dickinsons final claim is for injunctive relief. Because injunctive relief is a remedy, the Dickinsons' request for an injunction fails to state an independent claim. *See Terlecki v. Stewart*, 278 Mich. App. 644, 663, 754 N.W.2d 899, 912 (2008) ("It is well settled that an injunction is an

equitable remedy, not an independent cause of action."). The Dickinsons have failed to show that they are entitled to relief on any of their claims. Thus, the Court lacks any basis to award the Dickinsons an injunction.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motion for summary judgment and dismiss the Dickinsons' complaint with prejudice.

An Order consistent with this Opinion will be entered.

Dated: January 19, 2012

/s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE